## UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NEW HAMPSHIRE

Citizens for a Strong
New Hampshire, Inc.

    v.                          Civil No. 14-cv-487-LM
                                      Opinion No. 2015 DNH 158

Internal Revenue Service

### O R D E R

In May of 2013, the Internal Revenue Service ("IRS") became embroiled in a "targeting" scandal after it admitted that it had singled out politically conservative organizations by delaying and more closely scrutinizing their applications for tax-exempt status.  In the wake of the scandal, Citizens for a Strong New Hampshire, Inc. ("Citizens") filed a records request with the IRS pursuant to the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA").  The request sought disclosure of correspondence between two New Hampshire politicians and certain high-ranking IRS officials.  Now, Citizens has brought this lawsuit, accusing the IRS of conducting an inadequate search, unreasonably delaying its disclosure, and unlawfully withholding responsive documents.  Both parties have filed motions seeking summary judgment.  For the reasons that follow, the IRS's motion for summary judgment is granted in part and denied in part, and Citizens's motion for partial summary judgment is denied.

**Background**[1]

I.   The Targeting Scandal

The Internal Revenue Code confers tax-exempt status on certain organizations engaged primarily in charitable and civic endeavors.  See 26 U.S.C. § 501.  To obtain exempt status, an organization must submit a lengthy application to the IRS detailing, among other topics, the organization's mission and finances.

Once submitted, the application is reviewed by staff in the IRS's Determinations Unit.  As early as 2010, the Determinations Unit developed criteria that singled out applications from organizations that might be politically conservative.  For example, if the name of the organization contained terms like "Tea Party" or "Patriots," the application was more likely to be identified for closer scrutiny.  This would often mean that the organization would be asked to provide additional information beyond that required of other applicants (like the names and political activities of its donors).  As a result, many applications were delayed, and others were withdrawn in the face of the added scrutiny.  Once news of the targeting scandal was made public, the IRS faced a sharp rebuke, and several high-ranking officials resigned.

---

[1] These facts are summarized from the summary judgment record and are not in dispute.

II.  Citizens's FOIA Request

Citizens describes itself as a "non-partisan coalition of concerned citizens, community leaders, and other stakeholders concerned with promoting and preserving strong families and a strong economy for New Hampshire."  Compl. (doc. no. 1) ¶ 9. Among its other activities, Citizens "disseminat[es] information to the public regarding issues of interest and importance to the citizens of New Hampshire, including information about New Hampshire's elected officials."  Id.

The Complaint suggests that the targeting by the IRS of conservative organizations was spurred, in part, by Democrats in Congress.  For example, in 2012, New Hampshire Senator Jeanne Shaheen was among several Democratic senators to co-sign a letter to the commissioner of the IRS, urging the IRS to investigate tax-exempt organizations that might be abusing their exempt status by engaging in partisan political activity.[2]

In June of 2014, Citizens made a FOIA request to the IRS, seeking "[a]ny and all documents or records of email or correspondence to or from New Hampshire Senator [] Jeanne Shaheen and Congresswoman Carol Shea-Porter [] to or from [three high-ranking IRS officials] between the dates of January 1, 2009

---

[2] The Internal Revenue Code governs the nature and extent of political activity that an organization may undertake while maintaining tax-exempt status.  See 26 U.S.C. § 501(c).

and May 21, 2013." See FOIA Request (doc. no. 1-1).  One of the three named IRS officials was Lois Lerner who, at the time, served as the Director of the Exempt Organizations Unit, which oversaw applications for tax exemption.

It is undisputed that the IRS failed to respond to Citizens's request within the time allowed by FOIA.  On July 23, 2014, the IRS sent a letter to Citizens, confirming receipt of the request, but indicating that a response would be significantly delayed.  See July 23, 2014 IRS Letter (doc. no. 1-2).  The IRS acknowledged that, pursuant to FOIA, it had until August 6, 2014, to produce a timely response, but indicated that it would be unable to "locate and consider release of the requested records" until October 23, 2014.  Id.

On October 22, 2014, one day before the IRS's self-imposed deadline, the IRS sent a second letter to Citizens.  This letter indicated that the IRS would be unable to meet its own deadline, and that additional time was needed to "collect, process, and review any responsive documents."  See Oct. 22, 2014 IRS Letter (doc. no. 1-3).  This letter promised that the IRS would contact Citizens if it was going to be unable to produce the materials by January 27, 2015.  Shortly after receiving the IRS's October 22 letter, Citizens filed this lawsuit.

The summary judgment record also sheds light on the process undertaken by the IRS to respond to Citizens's request.  The IRS

4

has submitted two declarations by A.M. Gulas, a Senior Counsel
to whom the task of coordinating the IRS's response was
assigned.  Ms. Gulas's first declaration (doc. no. 12-3)
describes that once she received Citizens's request, she
contacted Ross Kiser, a Librarian and FOIA Functional
Coordinator for Legislative Affairs.  Mr. Kiser then conducted a
search of an electronic database known as E-Trak, which the IRS
uses to log certain correspondence, including most
correspondence between IRS staff and members of Congress.

Ms. Gulas's first declaration describes the results of Mr.
Kiser's search of E-Trak.  The search uncovered a total of 96
pages of responsive documents.  Of those 96 pages, Ms. Gulas
identified 41 pages for disclosure to Citizens.  The first
declaration states, however, that Ms. Gulas elected to withhold
51 of the pages because they consisted of correspondence from
taxpayers regarding their personal tax liability.  As the first
declaration explains, such documents are typically exempt from
disclosure pursuant to 5 U.S.C. § 552(b)(3), which bars
disclosure of documents "specifically exempted from disclosure
by statute."  Finally, the first declaration explains that Ms.
Gulas elected to disclose four pages in partially-redacted form
because they contained the personal identifying information of
taxpayers.  See 5 U.S.C. § 552(b)(6) (prohibiting disclosure
where it would constitute a "clearly unwarranted invasion of

5

personal privacy"). Thus, on November 26, 2014, when the IRS made its disclosure to Citizens, it disclosed 41 pages in full, along with four partially-redacted pages, and withheld the remaining 51 pages as exempt under § 552(b)(3).

During the course of this litigation, Citizens charged that Ms. Gulas's first declaration was inadequate and did not fully describe the nature of the search and the reasons for the withholding. In response, the IRS submitted a second declaration from Ms. Gulas (doc. no. 22-1). The second declaration states that, in March of 2015, the IRS conducted a second search, this time of documents that had been compiled during a congressional investigation into the targeting scandal. Ms. Gulas's second declaration describes the subsequent search in some detail, explaining, for example, which search terms were used. She explains that the second search produced documents that were either not responsive to Citizens's request, or that had already been discovered in the search of E-Trak.

III. <u>The Allegations</u>

Citizens alleges that the correspondence that it sought would have been of interest to voters in advance of the 2014 election. Citizens has brought a claim against the IRS for violation of FOIA, alleging that the IRS: (1) conducted an inadequate search; (2) unduly delayed its disclosure such that

6

Citizens could not disseminate the results of the search to voters in advance of the 2014 national election;[3] and (3) unlawfully withheld the 51 pages of responsive but purportedly exempt documents.[4]  Citizens seeks an order requiring the IRS to disclose the remaining 51 pages, a declaratory judgment that the IRS violated FOIA, as well as an award of fees and costs.  The IRS denies the allegations and argues that it is entitled to judgment as a matter of law.  Both parties now seek summary judgment.

## Standard of Review

A movant is entitled to summary judgment where he "shows that there is no genuine dispute as to any material fact and [that he] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Ponte v. Steelcase Inc., 741 F.3d 310, 319 (1st Cir. 2014).  In reviewing the record, the court construes all facts and reasonable inferences in the light most favorable to the nonmovant.  Kelley v. Corr. Med. Servs., Inc., 707 F.3d 108, 115 (1st Cir. 2013).  Where, as here, the parties have filed cross motions for summary judgment, the court applies

---

[3] In that election, Congresswoman Shea-Porter was defeated by Frank Guinta.  Senator Shaheen won her election, defeating former Massachusetts Senator Scott Brown.

[4] Citizens does not contest the IRS's decision to partially redact four pages of documents pursuant to 5 U.S.C. § 552(b)(6).

the same standard applicable to all summary judgment motions, but considers the motions separately.  Fadili v. Deutsche Bank Nat'l Trust Co., 772 F.3d 951, 953 (1st Cir. 2014).

## Discussion

The cross motions for summary judgment present three issues.  First, did the IRS conduct an adequately thorough search in response to Citizens's FOIA request?  Second, did the IRS violate FOIA by failing to issue a timely response? Finally, third, did the IRS improperly withhold 51 pages of documents under 5 U.S.C. § 552(b)(3)?  The court will address each of these questions in turn.

## I.   The Adequacy of the Search

Citizens alleges that the IRS violated FOIA by conducting an inadequate search that carelessly overlooked likely sources of responsive documents.  The IRS counters that its search was reasonable and was likely to uncover all relevant materials. Both parties seek summary judgment on this issue.

"The adequacy of an agency's search for documents under [] FOIA is judged by a standard of reasonableness and depends upon the facts of each case."  Maynard v. CIA, 986 F.2d 547, 559 (1st Cir. 1993).  "The crucial issue is not whether relevant documents might exist, but whether the agency's search was 'reasonably calculated to discover the requested documents.'"

Id. (quoting Safecard Servs., Inc. v. SEC, 926 F.2d 1197, 1201
(D.C. Cir. 1991)).

"In order to establish the adequacy of its search, the
agency may rely upon affidavits provided they are relatively
detailed and nonconclusory, and are submitted by responsible
agency officials in good faith."  Id.  "A satisfactory affidavit
should, at a minimum, describe in reasonable detail the scope
and method by which the search was conducted," and should
further describe "at least generally the structure of the
agency's file system which makes further search difficult."  Id.
(citations omitted) (internal quotation marks omitted).  An
agency is not required to search every conceivable record
system.  Id. at 563.  Rather, "an agency need only provide 'a
reasonably detailed affidavit, setting forth the search terms
and the type of search performed, and averring that all files
likely to contain responsive materials . . . were searched.'"
Id. (quoting Oglesby v. U.S. Dep't of the Army, 920 F.2d 57, 68
(D.C. Cir. 1990) (internal quotation marks and alterations
omitted)).

As noted previously, the IRS conducted its search through
the E-Trak database, which the IRS uses to log certain ingoing
and outgoing correspondence.  Later, as the litigation
progressed, the IRS conducted a second search of documents that
had been compiled in response to a congressional investigation

following the targeting scandal.  Citizens maintains that the
search process was deficient, and should have been expanded to
include two different databases known as the Information
Technology E-Discovery Office and the Personal Storage Table.

Separately, Citizens argues that the search was inadequate
as it pertained to Lois Lerner, one of the three IRS officials
named in Citizens's request.  As noted above, Ms. Lerner served
as the Director of the Exempt Organizations Unit, which was at
the center of the targeting scandal.  Citizens argues that the
IRS's search was inadequate because, first, at the time, the IRS
was unable to locate some 30,000 of Ms. Lerner's emails, and
second, Ms. Lerner was improperly using her personal email
account to conduct IRS business, in effect shielding these
emails from discovery through E-Trak.[5]

---

[5] The targeting scandal (and Ms. Lerner's involvement in it)
is detailed in a series of exhibits appended to Citizens's
motion for summary judgment.  These exhibits include filings
from a separate FOIA case in the United States District Court
for the District of Columbia, Judicial Watch, Inc. v. IRS, in
which the plaintiff alleged that the IRS conducted an inadequate
search in response to a request for documents related to the
targeting scandal.  The exhibits also include publications from
members of Congress who investigated the targeting scandal.

Citizens asks the court to take judicial notice of these
documents.  The court may take judicial notice of facts "not
subject to reasonable dispute" by virtue of their being
"generally known," or by virtue of their being "accurately and
readily determined from sources whose accuracy cannot reasonably
be questioned." Fed. R. Evid. 201(b).  The court carefully
reviewed these documents, and takes judicial notice of their
existence, but not the truth of the facts contained therein.

The First Circuit has set a standard by which government agencies, through the submission of "relatively detailed" and "nonconclusory" affidavits, may establish the adequacy of a FOIA search.  Maynard, 986 F.2d at 559.  Even when read together, however, Ms. Gulas's two declarations do not satisfy this deferential and undemanding standard.  In Ms. Gulas's first declaration, she explains in broad terms how she came to be involved in responding to Citizens's FOIA request.  She describes assigning the search to Mr. Kiser, and she explains that he used E-Trak to conduct the search.  Notably, however, Ms. Gulas does not fully describe the breadth of the correspondence that E-Trak contains, nor does she provide assurances of any kind that a search of E-Trak, alone, would be likely to turn up all responsive records.  Ms. Gulas's first declaration also does not describe Mr. Kiser's search in any detail.  For example, she does not include the specific search terms that Mr. Kiser employed.  Finally, Ms. Gulas's first declaration does not discuss the feasibility of searching other potential sources of responsive documents.

Ms. Gulas's second declaration describes a subsequent search that the IRS conducted of electronically stored information that had been collected as part of a congressional inquiry into the targeting scandal.  Ms. Gulas explains that the IRS collected documents from the email accounts of 88 IRS

officials, including Ms. Lerner and the other two officials named in Citizens's request.  Ms. Gulas's second declaration is more detailed in that it describes the precise scope of the documents searched and the specific search terms that were used. Importantly, however, the second declaration only describes the second search; it does not shed further light on the first search, nor does the second declaration provide assurances that the two searches were likely to uncover all responsive documents.  All of this is to say that the IRS has not established that it conducted a reasonable search.

On the other hand, neither has Citizens established that the search was unreasonable.  An agency's affidavit describing a FOIA search is accorded a presumption of good faith, which cannot be overcome by "purely speculative claims about the existence and discoverability of other documents." Maynard, 986 F.2d at 560 (quoting Safecard Servs., 926 F.2d at 1200).  Here, Citizens suggests that responsive documents might have been uncovered in a search of separate databases, Ms. Lerner's personal email account, or elsewhere.  These are precisely the sort of speculative claims that Maynard contemplates.

Put simply, there exist genuine issues of material fact as to whether the IRS conducted an adequate search, and the record does not entitle either party to summary judgment on this issue.

II.   <u>The Timeliness of Disclosure</u>

It is undisputed that the IRS failed to respond to Citizens's request for records by the deadline imposed by FOIA. The IRS received Citizens's request on June 24, 2014. Initially, the IRS indicated by letter that it would attempt to respond by October 23, 2014.  Later, the IRS missed its own deadline and, in a subsequent letter, informed Citizens that its response might not be complete until January of 2015.  Citizens asserts that the failure by an agency to comply with FOIA's timeliness requirements automatically entitles the requesting party to summary judgment.

FOIA obligates an agency receiving a FOIA request to respond within twenty business days.  5 U.S.C. § 552(a)(6)(A)(i).  In the case of certain "unusual circumstances," this time limit may be extended by up to ten additional business days.[6]  <u>Id.</u> at § 552(a)(6)(B)(i).  The remedy for agency noncompliance with these deadlines appears to be contemplated in the immediately ensuing subsection, which provides that "[a]ny person making a request to any agency for records . . . shall be deemed to have exhausted his administrative remedies with respect to such request if the

---

[6] The IRS initially invoked a ten-day extension for "unusual circumstances," which FOIA limits to certain situations such as where responsive records are located at off-site facilities.  <u>See</u> 5 U.S.C. § 552(a)(6)(B)(iii).  The right of the IRS to invoke such an extension is not at issue because the IRS failed to respond even within the extended time.

13

agency fails to comply with the applicable time limit provisions
. . . ."  Id. at § 552(a)(6)(C)(i).

Courts have reached different conclusions about how to
construe an agency's missed deadline under FOIA.  See Info.
Network for Responsible Mining v. Bureau of Land Mgmt., 611 F.
Supp. 2d 1178, 1183 (D. Colo. 2009) (noting that "there is room
for disagreement under the law as to whether [a requester is
entitled to] judgment against an agency [] based only on its
failure to respond to a FOIA request by the statutory
deadline").  Some courts have reasoned that the missed deadline
constitutes an independent FOIA violation, entitling the
plaintiff to judgment.  See, e.g., S. Yuba River Citizens League
v. Nat'l Marine Fisheries Serv., No. Civ. S-06-2845 LKK/JFM,
2008 WL 2523819, at *6 (E.D. Cal. June 20, 2008) ("Here, [the
defendant agency] has repeatedly shirked its statutory
responsibility to respond fully to plaintiffs' FOIA requests
within the timeframe set by Congress . . . The consistency of
these violations . . . show that a declaratory judgment is
appropriate here."); Oregon Natural Desert Ass'n v. Gutierrez,
409 F. Supp. 2d 1237, 1248 (D. Or. 2006) (granting summary
judgment in plaintiff's favor on grounds that "an untimely
response is a violation of FOIA, regardless of the final outcome
of the request"); Gilmore v. U.S. Dep't of Energy, 33 F. Supp.
2d 1184, 1187 (N.D. Cal. 1998) ("[A]n agency's failure to comply

14

with the FOIA's time limits is, by itself, a violation of the
FOIA, and is an improper withholding of the requested
documents.").

Other courts have disagreed, concluding that a tardy
disclosure merely represents an exhaustion of the requester's
administrative remedies, entitling him to seek legal recourse.
See, e.g., Oglesby, 920 F.2d at 64 ("The purpose of the [time]
limit for an agency response is to allow a FOIA requester, who
has not yet received a response from the agency, to seek a court
order compelling the release of the requested documents.");
Carmody & Torrance v. Def. Contract Mgmt. Agency, No. 3:11-CV-
1738 (JCH), 2014 WL 1050908, at *6 (D. Conn. Mar. 13, 2014)
("[U]ntimeliness is not a per se statutory violation entitling
the requester to any specific remedy.  Where the agency fails to
reply within the statutorily allotted [time], the recourse under
FOIA is litigation in federal court.") (citations omitted);
Barvick v. Cisneros, 941 F. Supp. 1015, 1019-20 (D. Kan. 1996)
("This court is persuaded that an agency's failure to respond
within [the time limit] does not automatically entitle a FOIA
requester to summary judgment."); M.K. v. U.S. Dep't of Justice,
No. 96 CIV. 1307 (SHS), 1996 WL 509724, at *3 (S.D.N.Y. Oct. 1,
1996) ("[T]he government's failure to respond to [plaintiff]'s
request within the statutory [] time limit . . . merely amounts

15

to an exhaustion of administrative remedies and allows [plaintiff] to bring this lawsuit.").

The court finds that an agency's failure to comply with FOIA's timeliness requirements, alone, does not entitle the requesting party to summary judgment.  Rather, such failure merely entitles the requester to seek judicial relief.  In § 552(a)(6)(C)(i), Congress contemplated the scenario in which an agency fails to respond to a FOIA request within the allotted time.  By equating the agency's failure with the requester's exhaustion of his administrative remedies, Congress evidenced an intent to entitle the requester to seek a remedy in the form of judicial relief.[7]  Such entitlement, however, cannot be read to automatically merit the entry of summary judgment in the requester's favor.  Indeed, such a reading would effectuate an additional remedy beyond that which Congress expressly created.  See U.S. v. Am. Commercial Lines, L.L.C., 759 F.3d 420, 424 (5th Cir. 2014) ("[W]hen Congress enacts a carefully calibrated liability scheme with respect to specific remedies, the structure of the remedies suggests that Congress intended for

---

[7] Of course, the exhaustion of administrative remedies is a prerequisite to seeking judicial relief under FOIA, as well as a litany of other statutory schemes.  See, e.g., Oglesby, 920 F.2d at 61-62 (FOIA); Estate of Barrett v. U.S., 462 F.3d 28, 36 (1st Cir. 2006) (Federal Tort Claims Act); Taylor v. Books A Million, Inc., 296 F.3d 376, 378-79 (5th Cir. 2002) (Title VII).

the statutory remedies to be exclusive.") (citations omitted) (internal quotation marks and alterations omitted).

In sum, the court finds that Citizens is not entitled to summary judgment on the grounds that the IRS failed to respond to its FOIA request within the allotted time.

III. The Withheld Documents

FOIA requires government agencies to disclose their records to the public upon request, unless at least one of several enumerated exemptions applies. 5 U.S.C. §§ 552(a)(3) and 552(b). As described previously, in this case, the IRS withheld 51 pages of documents that were responsive to Citizens's request, but that the IRS claimed were subject to exemption under 5 U.S.C. § 552(b)(3), which provides that FOIA's disclosure requirements "do[] not apply to matters that are specifically exempted from disclosure by statute . . . ." The IRS took the position that the applicable statute barring disclosure was 26 U.S.C. § 6103(a), which provides that a citizen's tax return "shall be confidential . . . [and] no officer or employee of the United States . . . shall disclose any return or return information obtained by him in any manner . . . ." The term "return information" is broadly defined to encompass things like a taxpayer's identity, the nature and source of his income, his tax liability, as well as "any other

17

data . . . with respect to the determination of the existence
. . . of liability . . . for any tax, penalty, interest,
[etc.]." 26 U.S.C. § 6103(b)(2)(A).

Citizens was dissatisfied with the explanation that the IRS
provided for withholding these materials and asked the court to
conduct an in camera review of the documents.  The court agreed,
and in an order dated June 8, 2015, directed the IRS to produce
all 51 pages for in camera review.

The court has completed its in camera review and can
confirm that the IRS properly withheld all 51 pages of
materials.  The court will briefly summarize its findings:

- Eight pages consist of correspondence between Senator
  Shaheen's office, the IRS, and a constituent who
  serves as a trustee to a charitable trust.  The
  correspondence relates to the trust's tax liability.

- Two pages consist of correspondence between Senator
  Shaheen's office, the IRS, and two constituents.  The
  correspondence principally involves a request by the
  constituents that Senator Shaheen support their
  application for tax-exempt status for an organization
  that would raise funds to combat a degenerative
  neurological condition in children.

- 32 pages consist of correspondence between Senator
  Shaheen's office, the IRS, and a constituent who
  serves as a director of a charity.  The correspondence
  involves the IRS's mistaken listing of the charity as
  "terminated," and the documents consist largely of
  the charity's tax returns.

- Two pages consist of correspondence between Senator
  Shaheen's office, the IRS, and a constituent regarding
  the constituent's request that the IRS expedite his
  organization's application for tax-exempt status.

The organization in question is related to science and outer space.

- Six pages consist of correspondence between Senator Shaheen's office, the IRS, and a constituent who had filed an application for tax-exempt status for his community radio station.  The correspondence principally relates to the constituent's request for an update on the status of his application.

- Finally, one page appears to be a privacy release form containing the personal information of one of Senator Shaheen's constituents.  Its purpose and relation to any of the other documents is unclear.

Upon close in camera examination, the court agrees with the IRS's determination that these 51 pages are exempt from disclosure.  Furthermore, because the documents consist almost exclusively of confidential "return information," disclosure in redacted form is not feasible.  Insofar as Citizens has alleged that the IRS violated FOIA on the basis of its withholding of these 51 pages of documents, the IRS is entitled to summary judgment.

**The Path Forward**

The issues presented in the cross motions for summary judgment are confined to: (1) the sufficiency of the IRS's records search; (2) the timeliness of that search; and (3) the IRS's authority to withhold 51 pages of responsive documents pursuant to 5 U.S.C. § 552(b)(3).  Today's order resolves two of these three issues.  For the reasons described, Citizens is not

entitled to summary judgment on the timeliness issue, and the IRS is entitled to summary judgment with respect to the withholding issue.

However, as set forth above, neither party is entitled to summary judgment on the issue of the sufficiency of the search, leaving the potential for a most unusual occurrence: a FOIA trial.  See Margaret B. Kwoka, The Freedom of Information Act Trial, 61 Am. U. L. Rev. 217, 257-58 (2011) (calculating that, between 1979 and 2008, less than 1% of FOIA cases went to trial, and further observing that "[i]n recent years, it is fair to say there have been essentially no FOIA trials").  The court will schedule a conference with the parties in order to discuss next steps.  The parties should be prepared to discuss, among other topics, the scope and logistics of a trial, the need for discovery, and the prospects of settlement.

### Conclusion

For the reasons described above, the IRS's motion for summary judgment (doc. no. 12) is granted in part and denied in part; Citizens's motion for partial summary judgment (doc. no. 17) is denied.

SO ORDERED.

_____
Landya McCafferty
United States District Judge

August 31, 2015

20

```
cc:   David A. French, Esq.
      Carly F. Gammill, Esq.
      Yonatan Gelblum, Esq.
      Bryan K. Gould, Esq.
      Francis J. Manion, Esq.
      Stephanie A. Sasarak, Esq.
      Jay Alan Sekulow, Esq.
      Abigail A. Southerland, Esq.
      Michelle K. Terry, Esq.
```